## Morrison's Appeal. .

The firm of B. & Co. was composed of B. and L. The firm dissolved October 1st 1872, by the withdrawal of L. B. continued the business under the old name of B. & Co. At the dissolution, B. executed his bond to L. in the sum of $20,000 in full consideration of L.'s interest in the firm assets. Five thousand dollars of this sum were afterwards paid. It was further agreed that B. & Co. should, from time to time, make and deliver to L. accommodation notes and renewals thereof, L. binding himself to protect the same as they matured. At this time L. was carrying on a separate business of his own under the name of L. & W. In 1874 L. associated with him as partners T. & M., and this new firm continued the name of L. & W. As the accommodation notes matured, they were renewed by B. & Co. in favor of L. & W., and were discounted by various banks to the credit of L. & W. B. & Co. made an assignment for the benefit of creditors September 1st 1876. In December 1875, L. & W. were adjudged bankrupts. Notes to the amount of $22,000 against B. & Co. were proved. From the evidence before the auditor of the account of the assignee of B. & Co., it appeared that B. & Co. had received no consideration for furnishing said notes, and that the banks were bona fide holders for value. These notes, the auditor reported, were but duplications of the $15,000 due on the bond. The banks proved the notes when M. of the firm of L. & W., and who was the vendee of the assignee in bankruptcy of L. & W., offered to prove before the auditor a claim for $2743.78 for merchandise of L. & W against B. & Co. The banks objected, as the debt claimed on was represented by the notes. It appeared that M. knew of the accommodation notes, and that four of the notes discounted had been endorsed by himself. The auditor held that inasmuch as notes for more than $22,000 had been proved against B. & Co. for the accommodation, without consideration of L. & W., the claim of L. & W. held by M. must be disallowed, which ruling the court sustained. *Held*, that this was error, that as the paper was issued originally for the benefit of L., and was afterwards, from time to time, renewed by B. & Co., and discounted on the endorsements of L. & W. for the sole purpose of lifting the originals or preceding notes, L. & W. did not owe B. & Co. anything, and the claim of M. should have been allowed.

February 27th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Appeal from the Court of Common Pleas No. 1, of *Philadelphia county :* Of January Term 1880, No. 35.

Appeal of James F. Morrison from the decree of the court dismissing the exceptions to the report of the auditor of the account of William P. Kildare, assignee of William H. Boner & Co., for the benefit of creditors. The auditor reported the facts as follows :

"William H. Boner, trading as William H. Boner & Co., made a voluntary assignment for the benefit of creditors to William P. Kildare, on the 1st of September 1876.

"The firm of William H. Boner & Co., was formerly composed of William H. Boner and Julius Lee. On October 1st 1872, the said partnership was dissolved, by the withdrawal of Lee, Boner agreeing to continue the business under the name of the old firm. In consideration of Lee's withdrawal, the new firm of William H. Boner & Co. executed and delivered to Lee a scire facias bond for $20,000,

payable in instalments within ten years, which was the full and only consideration for the transfer of the stock and business to William H. Boner & Co.   On this bond, $5000 were consequently paid by William H. Boner & Co.

" It was further agreed by the parties, that William H. Boner & Co. should from time to time make and deliver to Lee, accommodation notes and renewals thereof, Lee binding himself to protect the same as they matured.   William H. Boner & Co., in accordance with this agreement, gave from time to time their accommodation notes and renewals thereof, in favor of Lee & Walker, composed of Julius Lee, who, in the course of their business, had them discounted at various banks.

" On January 1st 1874, by articles of agreement, William N. Toy and James F. Morrison became members of the firm of Lee & Walker.   William H. Boner & Co. continued, whenever called upon, to give their accommodation notes and renewals thereof, in favor of Lee & Walker.   On January 9th 1875, Julius Lee died, but, according to the articles of partnership, the firm of Lee & Walker continued.   As the accommodation notes matured they were renewed by William H. Boner & Co., in favor of Lee & Walker, and were discounted by various banks, to the credit of Lee & Walker.   In December 1875, Lee & Walker were adjudged bankrupts, when these notes were proved against the estate, and a small dividend was received thereon.   They are now proved to the extent of $22,094.88 against William H. Boner & Co., the accommodation makers, by the Philadelphia National Bank, Commonwealth National Bank and Drexel & Co., who discounted them in the regular course of business, and placed the proceeds to the credit of Lee & Walker.   From the evidence it clearly appears, that William H. Boner & Co. received no consideration for furnishing the said notes, and that the said banks are bona fide holders for value.   As has already been stated, the scire facias bond for $20,000, was the full and only consideration for the transfer of stock and business to William H. Boner & Co.   The accommodation notes, amounting to $22,094.88, made in pursuance of the agreement of the parties, are really but duplications of the indebtedness of $15,000 on the bond which was not entered up against William H. Boner & Co.   The various banks having proved these notes, Mr. Morrison, of the firm of Lee & Walker, and the vendee of the assignee in bankruptcy of the said firm, offered to prove a claim for merchandise of Lee & Walker, amounting to $2743.78 against William H. Boner & Co.   This was objected to by the banks, as the debt claimed on was represented by the notes, and had already been proved.   It also appears that Mr. Morrison had full knowledge of the circumstances connected with the issuance of the accommodation notes, and that his firm had received the proceeds of them.   Four of the notes discounted by the Philadelphia

National Bank were endorsed by Mr. Morrison himself, and one by Mr. Toy, his partner.

"Now, inasmuch as notes amounting to more than $22,000, have been proved against William H. Boner & Co., on account of their accommodation without any consideration of Lee & Walker, the claim of Lee & Walker for $2743.78, held by Mr. Morrison, must be disallowed."

Morrison filed exceptions to this report, alleging that the auditor erred: 1. In disallowing the claim of Morrison. 2. In not reporting as a material fact proved, that the last firm of Lee & Walker, composed of Julius Lee, William N. Toy and James F. Morrison, who sold the goods for which the said claim was presented, did not assume to pay, and were not liable to pay the prior debt or liabilities of Julius Lee individually, or of Julius Lee alone, trading under the name of Julius Lee. 3. In not reporting as a material fact proved, that the notes of the banks stated in the report, were only given in renewal of notes, or for original notes upon which only Julius Lee and William H. Boner were liable, and upon which the new or last firm of Lee & Walker were not liable. 4. In not reporting as a material fact proved, that said new firm, in fact, have not received from the banks any of the moneys lent to them on their notes; but the money lent, was by arrangement with the banks, retained and applied by the banks to pay, take up, or renew notes upon which only Julius Lee and William H. Boner were responsible; and so that, it would appear, that although as between the banks and the parties on the notes, said Boner was apparently an accommodating party thereon, as between the firm and Boner, the firm, in fact, thereby accommodated Boner by paying, at his request, the notes on which he was liable, with their money borrowed from the banks, and without any consideration moving from Boner to the firm for that accommodation. 5. In sustaining the objection of the Philadelphia Bank, that the claim of the said James F. Morrison was paid by the notes to the bank, there being no testimony or evidence to ·warrant such conclusion, the facts being, that the claim now presented was for goods sold by the new firm to Boner, and that the notes were only given for money lent by the banks to the firm. 6. Because there was no evidence that William H. Boner, or his assignee, ever paid any of the notes of the banks as a foundation for a cross claim against Lee & Walker. 7. That the learned auditor erred in not holding, that as against what should be allowed to the banks in the shape of dividends of Boner's estate, and the claim of that estate against Lee & Walker for that allowance (for the amount thereof), there should be set off or considered the counter claim of Julius Lee's estate for the $15,000, balance due on said bond, as the loans to Julius Lee individually were the only consideration for the notes.

[Morrison's Appeal.]

The court, without delivering an opinion, dismissed the exceptions and confirmed the report.

From this decree this appeal was taken.

*R. P. White,* for appellant.—The notes in question were not accommodation notes at all, but were given for a bona fide indebtedness of Boner to Julius Lee, trading as Lee & Walker, and were collateral to Boner's bond for $20,000. Whether accommodation or not, the notes were issued to and used for the benefit of Julius Lee individually, trading under the name of Lee & Walker, whereas the claim presented by Morrison was for goods sold to a firm of the same name, but subsequently formed, and consisting of Julius Lee, William N. Toy and James F. Morrison, trading as Lee & Walker. The lattter firm was in no way responsible for the debts of the former: Babcock *v.* Stewart, 8 P. F. Smith 179; Shamburg *v.* Ruggles, 2 Norris 148.

Boner received consideration for furnishing the promissory notes of $22,094.88, inasmuch as his agreement to issue and renew these notes, as required, was a part of the consideration which he gave for Julius Lee's interest in the firm of W. H. Boner & Co.

It was an undisputed fact in the case that the original notes of the series were made and delivered to Julius Lee, trading as Lee & Walker, No. 1, before Morrison's firm was formed, and that all the other notes were mere renewals, the proceeds of each being used exclusively for the purpose of taking up its predecessor, Lee & Walker, No. 2, not receiving the benefit.

*Samuel B. Huey,* for appellee.—The vendee at the assignee's sale was not a stranger, but Morrison, the former bookkeeper, the financial partner of Lee & Walker, one of the bankrupts who signed and swore to the bankruptcy schedules, and he took such title as he has charged with the fullest possible knowledge of all the circumstances of the case.

If Lee & Walker, No. 2, did not assume the liabilities of Lee & Walker, No. 1, and hence did not assume payments of the notes in question, why did not Morrison & Toy charge the notes to the individual account of Julius Lee, and close the books? Why did they solicit new notes from W. H. Boner & Co., and endorse and use the same, Mr. Morrison himself endorsing four of the five of the Philadelphia Bank, and the firm receiving the proceeds of the discount of the renewals? And why did they pay the obligations of Lee & Walker, No. 1, as they matured?

The Philadelphia Bank proved for $7745.30, and on January 18th 1875, nine days after the death of Julius Lee, his executor drew a check on the Philadelphia Bank for $7849.83, and gave it to William N. Toy and James F. Morrison, who endorsed and used it. This was a cash transaction, and effectually disposes of the plea of no consideration.

Mr. Justice GORDON delivered the opinion of the court, May 3d 1880.

If we assume as true the facts found by the auditor, both his conclusion and that of the court are correct. For if indeed the notes of Boner, amounting now to some $22,000, were made and discounted for the firm of Lee & Walker, the claim of this firm, now in the hands of the appellant, amounting to $2743.78, cannot be allowed to participate in the distribution of the funds raised from the insolvent estate of Boner, and this for the very good reason that this estate is being compelled to pay for Lee & Walker a sum much larger than their claim. This conclusion, however, depends upon the fact, already stated, that the notes of Boner & Co. (Boner), now held by the Commonwealth National Bank and others, were made for the accommodation of Lee & Walker. On the other hand, if this paper was issued originally for the benefit of Julius Lee, and was afterwards, from time to time, renewed by Boner & Co., and discounted on the endorsements of Lee & Walker for the sole purpose of lifting the original or preceding notes, then it is just as clear that Lee & Walker owed Boner nothing, and the appellant's claim ought to have had its share of the fund.

How, then, are the facts? For upon them the case depends; about the law there is no dispute. We gather from the testimony and the auditor's report the following: There was the firm of William H. Boner & Co., composed of Boner and Julius Lee. This firm was dissolved on the 1st of October 1872, by the withdrawal of Lee, Boner, however, continuing the business under the old name of William H. Boner & Co. At the time of.this dissolution, Boner executed his bond to Lee in the sum of $20,000, in full consideration of Lee's interest in the firm's assets; $5000 of this were afterwards paid. Furthermore, it was agreed by the parties that Boner & Co. (Boner) should, from time to time, make, and deliver to Lee, accommodation notes and renewals thereof, Lee, on the other hand, binding himself to protect the same as they matured. At this time, Julius Lee was carrying on a separate business of his own under the name of Lee & Walker. Afterwards, in the year 1874, Lee associated with himself as partners William N. Toy and James F. Morrison, the appellant, and this new firm continued the name of Lee & Walker. The claim in controversy originated from the indebtedness of Boner to this latter firm. Again, the auditor finds, and in this he is supported by the facts of the case, "that the accommodation notes, amounting to $22,094.88, made in pursuance of the agreement of the parties, are really but duplications of the indebtedness of 15,000 on the bond, which was not entered up against William H. Boner & Co." In other words, the notes now sought to be charged against Lee & Walker were in fact made for the benefit of Julius

[Morrison's Appeal.]

Lee, and had for their consideration, in part, the unpaid balance of the Boner bond. Originally, therefore, the company last named had nothing whatever to do with these notes; indeed, it does not appear that it was in existence when they were issued. It follows unless on some consideration, moving from Lee or Boner, Lee & Walker assumed the payment of these notes, the auditor was wrong in his finding: Babcock *v.* Stewart, 8 P. F. Smith 179; Shamburg *v.* Ruggles, 2 Norris 148. The auditor says Morrison had full knowledge of the issuance of these accommodation notes, and that his firm received the proceeds. To be sure, Morrison and his firm knew all about these notes and their renewals, for the latter were discounted on their endorsements, but that they received the proceeds to their own use is quite another question.

The only testimony on this subject is that of Morrison himself, and he says that the present notes were renewals of former ones similarly drawn, and that the proceeds were used to pay these former notes; that the money raised on the original notes, which were drawn to Julius Lee, as Lee & Walker, went to the use of Lee alone; that the new firm endorsed the renewals in order to lift the originals, and that his firm had the use of none of the proceeds thereof, neither was there any consideration for such endorsements from either Boner or Lee. How, under this evidence, the auditor could find an indebtedness from Lee & Walker to Boner is something I cannot understand. Such indebtedness certainly could not have originated from the endorsements by that firm of Boner's paper by which, from time to time, it was saved from protest. And yet this seems to be all Lee & Walker had to do with this paper.

An attempt has been made to make something out of the fact that, in January 1875, the executor of Julius Lee gave his check to Lee & Walker, on the Philadelphia National Bank, for some $7800. But we cannot understand how this helps the matter. Mr. Smith, the executor, says, this money belonged to the firm of Lee & Walker, and the other partners having no right to draw checks he drew as executor. This means nothing more than that the surviving partners were put into the possession of money belonging to their own firm, but it certainly does not prove an indebtedness by that firm to either Lee or Boner.

The conclusion, then, is irresistible, that the court below erred in adopting the auditor's report, in so far as it excludes the claim of the appellant from a participation in the fund for distribution.

It is now ordered that the decree of the court below be reversed; that a new distribution be had in accordance with the above opinion, and that the appellees pay the costs of this appeal.